UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                                          )    Case No. _____
                                               )
                                               )
                                               )    **Notice of Motion for Relief**
                                               )    **From (Check All That Apply):**
                                               )        **Automatic Stay in a Chapter 7/13 Case**
                                               )        **Chapter 13 Codebtor Stay**
                                               )
Debtor(s)                                      )

1. **YOU ARE NOTIFIED** that a motion was filed by _____, the moving party, for (Check all that apply):

   Relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 U.S.C. § 362.

   Relief from the stay protecting the codebtor and codebtor's property as provided by 11 U.S.C. § 1301. Codebtor's name and service address are: _____ _____.

2. A copy of the motion is attached.  The name and service address of the moving party's attorney (or moving party, if no attorney) are: _____ _____.

3. If you wish to resist the motion, you must, within 14 days of the service date shown below, file the following with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E. 8th Ave. #2600, Eugene OR 97401:

   a. A written response that states the facts supporting the opposition to the motion by filling in the applicable "response" portions on a copy of the original motion. If the response will be electronically filed, the response must be prepared using the fillable pdf version of the original motion unless the motion was filed on paper and could not be electronically obtained from the movant; and

   b. A fully completed notice of hearing using Local Bankruptcy Form (LBF) 721, including the date and time of the hearing. Available hearing dates and times are posted at https://www.orb.uscourts.gov under the "Hearings" heading.  If you do not have internet access, please call the court at (503) 326-1500 or (541) 431-4000 and press "0" to obtain the required forms and hearing information.

4. **Failure to Object or Serve Proper Notice of Hearing**. If you fail to file a timely response and notice of hearing, then the automatic stay may expire as to the debtor(s) pursuant to 11 U.S.C. § 362(e) and the stay protecting the codebtor may expire pursuant to 11 U.S.C. § 1301(d), or the court may sign an order without further notice, submitted by the moving party on LBF 720.90, granting relief from the debtor stay and/or codebtor stay.

**720 (12/1/2018)**                          Page 1 of 2

I certify that:

(1) The motion was prepared using the fillable PDF version of LBF 720.80; and

(2) On _____ this notice and the motion were served on the debtor(s), any codebtor at the address listed above, the trustee, the U.S. Trustee, members of any committee elected pursuant to 11 U.S.C. § 705, and their respective attorneys.

_____
Signature of Moving Party or Attorney                    (OSB#)

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

In re ) Case No._____
)
) (*Check all applicable boxes*)
)     **Ch. 7/13 Motion for Relief from**
)       **Debtor     Chapter 13 Codebtor Stay**
)     Filed by Creditor:
)     _____
)     *Response to Stay Motion filed by Respondent:*
Debtor(s) )     _____

1. **Debt, Default, Other Encumbrances, Description and Value of Collateral** *(To be completed by creditor)*

   a. Description of collateral (car model, year, VIN, property address):


   b. Amount of debt: $_____ consisting of principal: $_____; interest: $_____;
      other:


   c. Description, amount and priority of other encumbrances on collateral. If not known, include applicable
      information from debtor's schedules if available on PACER:


      Total debt secured by collateral (total 1.b. + 1.c.): $_____.

   d. Value of collateral: $_____.
      Equity in collateral: $_____, after deducting $_____ liquidation costs.

   e. Current monthly payment: $_____.

   f. If Chapter 13:

      (1) $_____ postpetition default consisting of (e.g., $_____ payments, $_____
          late charges, $_____ fees):


      (2) $_____ prepetition default consisting of     amounts specified in proof of claim, or,
          consisting of:


   g. If Chapter 7, total amount of default $_____.

Case 19-30636-pcm7    Doc 28    Filed 06/10/19

***RESPONSE*** *(Identify specific items disputed and specify what you contend are the pertinent facts including why there is a postpetition default, if applicable) (to be completed by respondent):*

2. **Relief from stay should be granted because (check all that apply):** *(To be completed by creditor)*

        Lack of adequate protection because of failure to make sufficient adequate protection payments and lack of a sufficient equity cushion.

        Lack of insurance on collateral.

        No equity in the collateral and the property is not necessary for an effective reorganization.

        Failure of debtor to make Chapter 13 plan payments to the trustee.

        Failure of debtor to make direct payments to secured creditor required by Chapter 13 plan.

        Other (describe):

***RESPONSE*** *(Specify why relief from stay should be denied. If respondent proposes to cure a postpetition default, detail the cure by attaching a proposed order using Local Form (LBF) 720.90 available at* [https://www.orb.uscourts.gov](https://www.orb.uscourts.gov) *under Forms/Local Forms) (to be completed by respondent):*

3. **Background** *(To be completed by creditor)*

    a. Date petition filed: _____ Current Chapter: _____ (7 or 13)

       If 13, current plan date _____ Confirmed:    Yes    No

       If 13, treatment of creditor's prepetition claim(s) in plan:

       If 7, debtor    has    has not stated on Local Form (LBF) 521 or 521.05 that debtor intends to surrender the collateral.

    b. Creditor has a lien on the collateral by virtue of (check all applicable sections and also see paragraph 6 below):

       Security agreement, trust deed or land sale contract dated _____, and, if applicable, an assignment of said interest to creditor. The security interest was perfected as required by applicable law on_____.

Retail installment contract dated _____, and, if applicable, an assignment of said interest to creditor.  The security interest was perfected on the certificate of title on _____.
Other (describe):

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

4. **Request for Relief from Codebtor Stay** (*Chapter 13 only*)
   a. _____, whose address is _____
   _____, is a codebtor on the obligation described above, but is not a debtor in this bankruptcy.

   b. Creditor should be granted relief from the codebtor stay because (check all applicable boxes):
       codebtor received the consideration for the claim held by creditor,       debtor's plan does not propose to pay creditor's claim in full,       creditor's interest would be irreparably harmed by continuation of the codebtor stay as a result of the default(s) described above and/or       because:

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

5. **Other Pertinent Information** (To be completed by creditor, if applicable):

RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):

Case 19-30636-pcm7    Doc 28    Filed 06/10/19

6. **Relief Requested (check all applicable sections):** *(To be completed by creditor)*

Creditor requests relief from the automatic stay to allow it to foreclose its lien on the above identified collateral, and, if necessary, to take appropriate action to obtain possession of the collateral.

Creditor has a security interest in real property and requests relief from stay with respect to an act against such property and that the relief be binding in any other bankruptcy case purporting to affect such real property filed not later than 2 years after the date of the entry of an order granting this motion. (*If you check this box, you must complete paragraph 5 above to support this request. If you do not do so, the Court will not grant relief binding in any other bankruptcy case.*)

Creditor requests that the 14-day stay provided by FRBP 4001(a)(3) be waived based on the following cause:

Other (describe and explain cause):

**RESPONSE** (*Identify any disputed items and specify the pertinent facts. If respondent agrees to some relief, attach a proposed order using Local Bankruptcy Form (LBF) 720.90 available at* https://www.orb.uscourts.gov *under Forms/Local Forms) (to be completed by respondent):*

7. **Documents:**

**If creditor claims to be secured in paragraph 3.b. above** creditor has attached to and filed with this motion a copy of the documents creating and perfecting the security interest, if not previously attached to a proof of claim.

**If this case is a Chapter 13 case and the collateral as to which creditor seeks stay relief is real property**, creditor has attached to and filed with this motion a postpetition payment history current to a date not more than 30 days before this motion is filed, showing for each payment the amount due, the date the payment was received, the amount of the payment, and how creditor applied the payment.

**RESPONDENT requests creditor provide** Respondent with the following document(s), if any marked, which are pertinent to this response:

Postpetition payment history if not required above.

Documents establishing that creditor owns the debt described in paragraph 1 or is otherwise a proper party to bring this motion.

Other document(s) (specific description):

Creditor/Attorney                                      Respondent Debtor/Attorney *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:_____          Signature:_____
Name:_____          Name:_____
Address:_____          Address:_____
_____          _____
Email Address:_____          Email Address:_____
Phone No:_____          Phone No:_____
OSB#:_____          OSB#:_____

Respondent Codebtor/Attorney *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:_____
Name:_____
Address:_____
_____
Email Address:_____
Phone No:_____
OSB#:_____

*You are hereby notified that the creditor is attempting to collect a debt and any information obtained will be used for that purpose.*

# ADJUSTABLE RATE NOTE
## (COOPERATIVE UNIT)

### (1 Year Treasury Index-Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

September 23, 2004                          New York,               NY
[Date]                                        [City]              [State]

**41 Perry Street, Apt. 3D, New York, NY 10014**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S $256,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Wells Fargo Bank, N.A.**. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **5.125** percent. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on **November 1, 2004**. I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. My monthly payment will be applied to interest before principal. If, on **October 1, 2034** which is called the "Maturity Date", I still owe amounts under this Note, I will pay those amounts, in full, on that date ".

I will make my monthly payments to Wells Fargo Bank, N.A., P.O. Box 4148, Frederick, Maryland 21705-4148, or at a different place required by the Note Holder.



**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$1,393.89**. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **October, 2011**, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date".

**(B) The Index**

Beginning with the first change date, my interest rate will be based on an index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each change date, the Note Holder will calculate my new interest rate by adding **two and three-quarters** percentage points (**2.75%**) to the Current Index. The Note Holder will then round the result of this addition up to the nearest one-eighth (1/8) of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.125 %** or less than **2.750%**. Thereafter, my interest rate will never be increased (or decreased) on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than **10.125%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information



required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal on any regular payment date before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of this charge will be two percent (2%) of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of the principal which has not been paid and all the interest that I owe on that amount. That date must be at least thirty (30) days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the



extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of nonpayment (known as a "protest"). Anyone else (i) who agrees to keep the promises made in this Note, or (ii) who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or (iii) who signs this Note to transfer it to someone else (known as "guarantors, sureties, and endorsers"), also waives these rights.

## 11. THIS NOTE COVERED BY A LOAN SECURITY AGREEMENT

In addition to the protections given to the Note Holder under this Note, a Loan Security Agreement, dated **September 23, 2004** covering my **135** shares of capital stock of **41 Perry Owners Corp.** and my lease of apartment **3D** in the building commonly known by the street address of **41 Perry Street, Apt. 3D, New York, NY 10014** protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. The Loan Security Agreement describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

I agree that all of the terms in the Loan Security Agreement are made a part of this Note.

## 12. APPLICATION OF PAYMENTS

All payments received by the Note Holder shall be applied (1) to payments made by the Note Holder to protect its lien under the Loan Security Agreement; (2) to pay unpaid late charges; (3) on account of interest; and (4) on account of principal.



## 13. GENERAL PROVISIONS

This Note shall be governed by the laws of the state in which the property is located. This Note may be changed only by an agreement in writing signed by me and the Note Holder. If any provisions of this Note shall be found invalid, the remaining terms shall be binding and effective.

_____ (L.S.)

Francis W. McDonnell Jr.     [Borrower]

_____ (L.S.)

[Borrower]

(Sign original only)

State of New York,    )
                        ) ss.:
County of New York ,   )

On the **23rd** day of **September**, in the year **2004** before me, the undersigned, personally appeared **Francis W. McDonnell Jr.** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

KELLY ANNE O'BRIEN
Notary Public of New York
No. 01OB6106780
Qualified in New York County
Commission Expires March 15, 20 ____

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY: _____
Melinda Herrmann, Vice President
Of Loan Documentation

ARM-1 CO-OP NOTE
4/14/2000

# LOAN SECURITY AGREEMENT
## (COOPERATIVE UNIT)

**PARTIES:** This LOAN SECURITY AGREEMENT (COOPERATIVE UNIT), made **September 23, 2004** between **Francis W. McDonnell Jr.**, residing at **41 Perry Street, Apt. 3D, New York, NY 10014**, ("the Borrower") and **Wells Fargo Bank, N.A.**, (the "Lender"), a National Association organized under the laws of the United States, having its principal place of business at 405 SW Fifth Street, Des Moines, IA 50309. If more than one person enters into this agreement with the Lender, they together shall be known as the "Borrower" and they shall be jointly and severally liable (which means either or any one of them may be made to pay the full amount due under this agreement).

**NOTE:** Borrower has signed a note (the "Note"), payable to the order of the Lender in the principal sum of **$256,000.00** with interest as described in the Note.

**STOCK AND LEASE:**  Borrower is the owner and holder of **135 shares** of capital stock (the "Stock") of **41 Perry Owners Corp.** (the "Corporation") and is a tenant under a lease (the "Lease") dated **September 23, 2004** between the Corporation, as landlord, and **Francis W. McDonnell Jr.**, as tenant(s).  The Lease relates to and the stock is allocated to apartment **3D** (the "Apartment") in the building on the premises described in the attached exhibit marked "A", commonly known by the street number as **41 Perry Street, New York, NY 10014**.

**PLEDGE OF STOCK:**  To secure the payment of the Note, the Borrower, by this Loan Security Agreement, gives to the Lender a security interest in the shares of the Stock of the Corporation evidenced by the Stock issued to the Borrower together with all increases, profits, proceeds, additions, and substitutions for that stock.  A Security Interest means that if the Borrower does not pay the Note as required, the Lender may sell the stock and apply the proceeds to any sums due.  If an event of default occurs (see Events of Default section below), and the Lender demands repayment in full, the Borrower appoints the Lender as his or her proxy with full power and authority to attend all shareholder meetings and exercise all rights of a voting shareholder of the Stock.  Borrower will not revoke or withdraw this appointment without the written consent of the Lender.

**ASSIGNMENT OF LEASE:**  As additional security for the Note, Borrower by this Loan Security Agreement assigns the Lease to the Lender and gives the Lender a security interest in it.  This means that at the option of the Lender, it may sell or transfer the Lease and apply the proceeds to the payment of any sums due under the Note, if there is an Event of Default.

**FINANCING STATEMENTS:**  The Borrower gives the Lender permission to file or renew a financing statement without the Borrower's signature on it.  A financing statement is notice of the Lender's Security Interest filed in the public records.

**MORTGAGE INSURANCE:**  If Lender required mortgage insurance as a condition of making the loan secured by this Loan Security Agreement, Borrower shall pay the premiums required to maintain that mortgage insurance in effect. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required Borrower to make separate payments toward the premiums for Mortgage Insurance, Borrower will pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternative mortgage insurer approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the coverage lapsed or ceased to be in effect.  Lender will accept, use and retain these payments as a "Loss Reserve" in lieu of Mortgage Insurance.  Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance overage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained.  Borrower shall pay the premiums required to maintain mortgage



insurance in effect, or to provide a Loss Reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

## REPRESENTATIONS:

1. Borrower states that Borrower is the lawful owner of the Stock and the Lease, free and clear of all claims and other security interests and has full right to pledge these security interests to the Lender.

2. The Borrower will comply with all the terms of the Lease and will defend the Lease and Stock against all claims and demands by any persons who claim an adverse interest.

3. The Borrower will not sell, transfer, pledge or assign the Stock or the Lease, or attempt to do so without the Lender's prior written consent.

4. The Lender may file or record the Lease and/or this Loan Security Agreement if it decides this is necessary to protect its interest, and the Borrower agrees to pay for all filing fees, mortgage tax, or any other official fees, that may be incurred in connection with such recordation.

5. The Borrower has delivered to the Lender the original Certificates of Stock and the original Lease and the Borrower will not attempt to replace them or modify his or her interest as represented by the original Stock Certificates and the original Lease Agreement.

6. Borrower agrees to make all payments of principal and interest pursuant to the terms of the Note.

7. The Borrower agrees to occupy the Apartment.

8. Borrower agrees to pay one-twelfth (1/12) of the estimated yearly premium for private mortgage insurance (if Private Mortgage Insurance is required by Lender) on the same day that Borrower's monthly payments of principal and interest are due pursuant to the terms of the Note.

**EVENTS OF DEFAULT:** If any of the following Events of Default occurs, the Lender will have the right to demand the principal balance and interest on the Note be immediately due and payable, and Lender will have the right to sell the Stock and the Lease, and to use any other legal means to enforce its interest:

1. The Borrower refuses to deliver immediate possession of the Lease or the Stock or any replacements, modifications, additions, proceeds, or substitutions for them.

2. The Borrower fails to pay within fifteen (15) days after the due date any installment of interest or principal on the Note.

3. The Borrower fails to pay when due the rent, maintenance charges, or other money required under the Lease.

4. The Borrower breaks any of his or her promises under the Note, the Lease, or this Loan Security Agreement.

5. The Lease is canceled by the Corporation or is in any other way terminated.

6. The Borrower has made any false or misleading statements in connection with this transaction.

7. The Borrower files bankruptcy or any other legal proceeding is instituted to seek relief from the Borrower's debts.

8. The Borrower sells or assigns his or her interest in the Stock or Lease.

9. The Borrower permits any other lien or security interest to attach to the Stock and/or Lease.

10. The Borrower sublets the Apartment or assigns the Lease without the prior written consent of the Lender and the Corporation.

11. The Borrower fails to furnish a statement as required in the Status Certificate section below.

12. One of the events in the Corporate Insecurity section below occurs.



13. The Borrower fails to pay one-twelfth (1/12) of the estimated yearly premium for Private Mortgage Insurance (if Private Mortgage Insurance is required by Lender) within fifteen (15) days after the due date of any installment of principal and interest on the Note.

## NOTICE OF DEFAULT AND SALE:

(a) If one of the Events of Default above occurs and the Lender decides to demand payment in full, then the Lender will send a written notice that the principal sum and all interest is due and payable immediately. This notice will be sent by mail, to the Borrower at the Apartment. If the Borrower shall fail to pay the amounts due within ten (10) days after the mailing of said notice, ,then the Lender may sell, assign and deliver the Borrower's Stock and his or her interest in the Lease at public or private sale, and exercise any other option that legally may be available to it including any rights the Lender may have under the laws of the State in which the property is located to foreclose its Security Interests in the same manner as a real property mortgage. Seven (7) days written notice of the sale of the Stock and Lease shall be given to the Borrower. In accordance with state law, the Lender shall determine the terms of any such sale at the Lenders' sole discretion. A sale conducted according to the usual practice of banks selling similar security will be considered reasonably conducted. The Lender may buy the Stock and/or the Lease at any sale and after such purchase, the Borrower may not regain his or her interest in the Stock or Lease. The Lender can use the proceeds of the sale to pay all amounts that the Borrower owes the Lender under this Agreement and under the Note. The Lender can add the expenses of collection, sale and delivery of the Apartment and any other expenses including, but not limited to, reasonable attorney's fees and disbursements, costs, broker's commission, and transfer fees and taxes to what the Borrower owes the Lender. If the money from the sale of the stock and the Lease does not cover all the money that is due under the Note, the Borrower will be responsible for paying the amount still owed. If the Lender owes the Borrower any money, the Lender can use it to pay any such difference. The Lender may sell the apartment for immediate cash payment or on credit. If the sale is on credit, the Lender shall retain the Apartment until the sale price is paid in full. The Lender will not be liable if the buyer fails to pay, and the Lender may then resell the Apartment. Any time before the sale the Borrower may get the Stock and/or Lease back by paying all amounts owing and all necessary expenses incurred by the Lender in preparing for the sale of the Stock and/or Lease. If there is any surplus money after the sale, it will be returned to the Borrower.

(b) The Lender may elect to continue to hold the Apartment if the Lender determines that a better price may be obtained at a later date and, absent gross negligence, the Lender will not be liable to the Borrower for any loss in value in the Apartment.

(c) If the Lender elects to retain the apartment, the Lender shall give the Borrower notice of such election. If the Borrower objects to the Lender's election within thirty (30) days after the Lender's notice, the Lender shall offer the Apartment for sale and must sell if the net proceeds would be large enough to pay all that the Borrower owes the Lender under the Note and this Agreement.

(d) The Borrower hereby gives the Lender the right, in connection with such sale, to request that the Corporation terminate the Lease and take all lawful steps necessary to obtain possession of the Apartment for and on behalf of the Lender.

(e) The Lender or anyone designated by the Lender may purchase the apartment as stated above, free of the Borrower's right to redeem the Apartment, which right of redemption the Borrower now waives.

(f) The Lender may seek the appointment of a receiver, without notice to the borrower and without regard to the adequacy of the Apartment.

**DISPOSITION OF SALE PROCEEDS:** If the Lender sells the Apartment, the proceeds shall be applied as follows: (i) to the expenses of the collecting, selling and delivering the Apartment, including (but not limited to) attorney's fees, brokerage commissions, transfer fees and taxes; (ii) to the payment of any charges due under the Lease; (iii) to the payment of the Borrower's debt in full; and (iv) the surplus, if any, to the Borrower, unless there are other valid claims to the surplus.

**APPOINTMENT OF RECEIVER:** The Borrower agrees that if any action to foreclose the Lender's security interests is brought, the Lender is entitled to the appointment of a receiver without notice.



**SALE BY BORROWER AFTER DEFAULT:** The Lender agrees that if the sale of the Stock and Lease is not commenced within 90 days after one of the Events of Default above occurs and after the Lender has demanded repayment in full under the Note, the Borrower may arrange for the sale of the Stock and Lease provided he or she can give satisfactory proof to the Lender that all the sums remaining due and owing will be paid in full. By permitting the Borrower to sell his or her interest, the Lender does not waive any of its rights under this Loan Security Agreement including the right to collect any sums due and owing after the sale.

**COMPLETION OF DOCUMENTS:** In connection with any sale or disposition of the Stock or the Lease, the Lender shall have the right to complete the incomplete Stock Power and Assignment of the Lease (which are given along with this Loan Security Agreement to provide the Lender with additional security) for the purpose of transferring the Stock and the Lease. The Borrower agrees the Corporation, its officers, agents or attorneys, shall incur no liabilities to the Borrower in the event the Corporation transfers the Borrower's Stock and Lease in accordance with provisions of this Loan Security Agreement, or brings any proceeding to dispossess or evict the Borrower from the Apartment by reason of the occurrence of an Event of Default under this agreement. The Corporation may refuse to effect any attempted transfer of the Borrower's Stock or Lease made without the prior written consent of the Lender.

**STATUS CERTIFICATE:** The borrower agrees to furnish within ten (10) days of the Lender's request a signed statement of the amount due on the Note and whether any offsets or defenses exist against the Note.

**CORPORATE INSECURITY:** The Borrower agrees that it is an Event of Default (see Events of Default section above) if one or more of the following occur: (1) the Corporation fails to pay any mortgage payments or real estate taxes it is obligated to pay, (2) the Corporation fails to insure the building of which the Apartment is a part, (3) a bankruptcy, foreclosure or insolvency proceeding is brought by or against the Corporation, or (4) the building of which the Apartment is a part is materially destroyed or damaged by fire or the elements.

**SURRENDER OF POSSESSION:** The Borrower understands that if any sale of the Stock and Lease occurs under this Loan Security Agreement, the Borrower will vacate and surrender the Apartment on demand and the Lender will have the right to maintain summary or other proceedings to obtain such possession if the Borrower shall fail or refuse to surrender possession.

**PAYMENTS FOR BORROWER'S ACCOUNT:** The Lender, at its option, may make any payments for the Borrower's account, or do any acts required to be done in order to prevent a default in or breach of the Lease. In the event the Lender makes any payments or acts on behalf of the Borrower, such payments or other expenses together with interest on them as specified in the Note will be added to the indebtedness secured by this agreement and shall be payable to the Lender by the Borrower on demand.

**REIMBURSEMENTS FOR EXPENSES:** If any action or proceeding is started by the Lender, by the Borrower, or anyone else, or if the Lender is made a party in an action or proceeding to foreclose, uphold or defend the Security Interests or other rights granted to the Lender by this Loan Security Agreement, all sums paid by the Lender for the expenses of any such litigation (including reasonable attorney's fees and disbursements) together with interest on the expenses at the rate stated in the Note, shall be added to the indebtedness secured by this Loan Security Agreement and shall be payable to the Lender by the Borrower, on demand.

**DISTRIBUTION OF CAPITAL:** The Lender will have the right to receive any distributions of capital from the Corporation, and shall apply any such distributions to reduce the amount that the Borrower owes the Lender.

**USURY:** If the law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charges shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from the Borrower which exceed permitted limits will be refunded to the Borrower. The Note Holder may choose to make this refund by reducing the principal the Borrower owes under the Note or by making a direct payment to the Borrower. If a refund reduces principal, the reduction will be treated as a partial repayment.



**SUCCESSORS AND ASSIGNS:** All of the Borrower's rights and obligations under this Agreement, and all of the Lender's rights and obligations under this Agreement, shall bind and benefit their respective distributees, legal representatives, successors, heirs and assigns. The Lender retains any and all rights the Lender may otherwise have that are not set forth in this Agreement. This provision shall not be construed to give the Borrower the right to sublet the Apartment, assign the Lease or transfer the Stock. However, the Lender may assign this Agreement and Lender's rights to the Apartment without the Borrower's consent.

**APPLICABLE LAW:** This Agreement is governed by the laws of the state in which the property is located. If any provision in this Loan Security Agreement is found invalid, the remainder of this Loan Security Agreement will still be binding and effective. If the property is covered by this Loan Security Agreement is located in the State of New York, this Loan Security Agreement is subject to the trust fund provisions of Section 13 of the New York Lien Law.

**DELIVERY OF SECURITY:** If Borrower sells the Apartment before the Loan is paid in full, Borrower may ask the Lender to deliver the stock and lease to Borrower at the closing of the sale, and in that event, the Lender may, but will not be required to, arrange for one of its closing attorneys to deliver the Stock and Lease and collect for the Lender the amount which is necessary to pay off the Loan. The Lender's closing attorney may charge Borrower a fee for this service.

The Borrower has signed this Loan Security Agreement on the date written above.

In the Presence of:

_____          _____
Witness                                    Francis W. McDonnell Jr.        [Borrower]

_____          _____
Witness                                                                    [Borrower]

State of New York,      )
                        ) ss.:
County of New York,     )

On the **23rd** day of **September**, in the year **2004** before me, the undersigned, personally appeared **Francis W. McDonnell Jr.**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and                    acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

KELLY ANNE O'BRIEN
Notary Public of New York
No. 01OB6106780
Qualified in New York County
Commission Expires March 15, 20 *08*

CO-OP LSA
4/14/2000

# EXHIBIT A
## LOAN SECURITY AGREEMENT

EXHIBIT A to LOAN SECURITY AGREEMENT (COOPERATIVE UNIT) DATED **September 23, 2004** made between **Francis W. McDonnell Jr.** and **Wells Fargo Bank, N.A.** ("Lender").

Apartment **3D** in the building known as and by the street address **41 Perry Street, New York, NY 10014** in the City of **New York**, County of **New York**, and State of **New York**.

       Block: _____

       Lot: _____



# FIXED/ADJUSTABLE RATE RIDER
## 7/1 YEAR FIXED/ARM
**0139839856**

(One Year Treasury Index - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **23rd day of SEPTEMBER, 2004**............., and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Fixed/Adjustable Rate Note (the "Note") to .............................................................
**WELLS FARGO BANK, N.A.**.................................................................................................... ("Lender")
of the same date and covering the property described in the Security Instrument and located at: .........
**41 PERRY STREET, APT. 3D, NEW YORK, NY 10009**........................................................................
(Property Address)

**THE NOTE PROVIDES FOR A CHANGE IN THE BORROWER'S FIXED
INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS
THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of ..**5.125**.... %. The Note also provides for a
change in the initial fixed interest rate to an adjustable interest rate, as follows:

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
**OCTOBER, 2011**........., and the adjustable interest rate I will pay may change on that day every 12th
month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest
rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

#### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the weekly average yield on United States Treasury securities adjusted to a constant
maturity of one year, as made available by the Federal Reserve Board. The most recent Index
figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - 1 YEAR TREASURY INDEX
Single Family - Fannie Mae Uniform Instrument

Form 3182  1/01      EC113L Rev.11/21/00
*(page 1 of 4 pages)*



**(C) Calculation of Changes**                                                                    0139839856

Before each Change Date, the Note Holder will calculate my new interest rate by adding **two and three-quarters** ............................. percentage points (...**2.750**....%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than .....**10.125**.........% or less than ....**2.750**......%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than ...**10.125**......%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.



If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.



0139839856

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____(Seal)
FRANCIS W. MCDONNELL JR.                 -Borrower

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - 1 YEAR TREASURY INDEX          Form 3182  1/01    EC113L Rev. 11/02/00
Single Family - Fannie Mae Uniform Instrument                                              (page 4 of 4 pages)

t Filed 06/10/19

## UCC FINANCING STATEMENT COOPERATIVE ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME + PHONE OF CONTACT AT FILER (optional)**

**B. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 19. Complete EITHER 19a or 19b. | 19a. This COOPERATIVE ADDENDUM accompanies a FINANCING STATEMENT. | 19b. File Number assigned to the Initial FINANCING STATEMENT. |
| --- | --- | --- |

**20. FIRST DEBTOR OF RECORD: (Complete either 20a or 20b, but not both.)**

20a. ORGANIZATION'S NAME:

| OR | 20b. INDIVIDUAL'S LAST NAME: | FIRST NAME: | MIDDLE NAME: | SUFFIX: |
| --- | --- | --- | --- | --- |
| | McDonnell | Frances | W. | Jr. |

**21. FIRST SECURED PARTY OF RECORD: (Complete either 21a or 21b, but not both.)**

21a. ORGANIZATION'S NAME:
First American Bank

| OR | 21b. INDIVIDUAL'S LAST NAME: | FIRST NAME: | MIDDLE NAME: | SUFFIX: |
| --- | --- | --- | --- | --- |

**22. This COOPERATIVE ADDENDUM covers: (Check one.)**

☒ One COOPERATIVE INTEREST ☐ More than one COOPERATIVE INTEREST

**23. Unit uses: (Check all that apply.)**

☒ Residential ☐ Commercial ☐ Parking

☐ Storage ☐ Other (If checked, complete 23d.)

23a. Specify other Unit use(s):

**IMPORTANT:**

This COOPERATIVE ADDENDUM is for use when the collateral includes a COOPERATIVE INTEREST.

Only as to collateral which is a COOPERATIVE INTEREST, but not as to other collateral, the Initial FINANCING STATEMENT to which this COOPERATIVE ADDENDUM relates shall be effective for 50 years from the date of filing the Initial FINANCING STATEMENT.

**24. COOPERATIVE UNIT REAL PROPERTY FILING DATA:**

24a. ADDRESS NUMBER and STREET: (One unit)
41 Perry Street

24b. COMMUNITY (e.g., City, Town, Village or Borough):
New York

24c. COUNTY:
New York

24d. DISTRICT:

24e. SECTION:

24f. BLOCK:
613

24g. LOT:
40

24h. UNIT NUMBER(S) or DESIGNATION(S):
3D

**25. Name of the COOPERATIVE ORGANIZATION:**
41 Perry Owners Corp.

**26.** Complete if applicable. (If checked, complete 26a.)
☐ The purpose of this COOPERATIVE ADDENDUM is to SUBORDINATE this security interest to another security interest in the same COOPERATIVE INTEREST.

26a. FILE NUMBER of security interest being given contextual priority:

**27.** Check if Applicable.
☐ The security agreement provides for FUTURE ADVANCES.

**28. MISCELLANEOUS:**

NEW YORK UCC FINANCING STATEMENT COOPERATIVE ADDENDUM (FORM UCC1CAd) (REV. 6/14/01)





UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

1731339

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| McDonnell | Francis | W. | | Jr. |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 41 Perry Street, Apt. 3D | New York | NY | 10014 | USA |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| First American Bank | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 201 S. State St. | Hampshire | IL | 60140 | USA |

4. This FINANCING STATEMENT covers the following collateral:

41 Perry Street, Apt. 3D
New York, NY 10014

41 Perry Owners Corp.

All of the Debtor's interest in 135 shares of stock in, and the proprietary lease for apartment(s) 3D with 41 Perry Owners Corp., formed for the purpose of cooperative ownership of real property and any additional, substitute or replacement stock and any lease amendments, substitutes or replacements.

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)                International Association of Commercial Administrators (IACA)

**UCC FINANCING STATEMENT COOPERATIVE ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 19. Complete EITHER 19a or 19b. | 19a. ☒ This COOPERATIVE ADDENDUM accompanies a FINANCING STATEMENT. | 19b. File Number assigned to the Initial FINANCING STATEMENT. |
|---|---|---|

**20. FIRST DEBTOR OF RECORD: (Complete either 20a or 20b, but not both.)**

20a. ORGANIZATION'S NAME:

OR

| 20b. INDIVIDUAL'S LAST NAME: | FIRST NAME: | MIDDLE NAME: | SUFFIX: |
|---|---|---|---|
| McDonnell | Frances | W. | Jr. |

**21. FIRST SECURED PARTY OF RECORD: (Complete either 21a or 21b, but not both.)**

21a. ORGANIZATION'S NAME:
First American Bank

OR

| 21b. INDIVIDUAL'S LAST NAME: | FIRST NAME: | MIDDLE NAME: | SUFFIX: |
|---|---|---|---|

**22. This COOPERATIVE ADDENDUM covers: (Check one.)**
☒ One COOPERATIVE INTEREST ☐ More than one COOPERATIVE INTEREST

**23.  Unit uses: (Check all that apply.)**
☒ Residential   ☐ Commercial   ☐ Parking
☐ Storage   ☐ Other (if checked, complete 23a)

23a. Specify other Unit use(s):

**IMPORTANT:**

This COOPERATIVE ADDENDUM is for use when the collateral includes a COOPERATIVE INTEREST.

Only as to collateral which is a COOPERATIVE INTEREST, but not as to other collateral, the initial FINANCING STATEMENT to which this COOPERATIVE ADDENDUM relates shall be effective for 50 years from the date of filing the initial FINANCING STATEMENT.

**24. COOPERATIVE UNIT REAL PROPERTY FILING DATA:**

24a. ADDRESS NUMBER and STREET: (One only)
41 Perry Street

24b. COMMUNITY (e.g., City, Town, Village or Borough):
New York

24c. COUNTY:
New York

24d. DISTRICT:

24e. SECTION:

24f. BLOCK:
613

24g. LOT:
40

24h. UNIT NUMBER(S) or DESIGNATION(S):
3D

**25. Name of the COOPERATIVE ORGANIZATION:**
41 Perry Owners Corp.

**26.** Complete if applicable. (If checked, complete 26a.)
☐ The purpose of this COOPERATIVE ADDENDUM is to SUBORDINATE this security interest to another security interest in the same COOPERATIVE INTEREST.

26a. FILE NUMBER of security interest being given consensual priority:

**27.** Check if Applicable.
☐ The security agreement provides for FUTURE ADVANCES.

**28. MISCELLANEOUS:**

NEW YORK UCC FINANCING STATEMENT COOPERATIVE ADDENDUM (FORM UCC1CAd) (REV. 8/14/01)